

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

Case No.: 22-11541-HH

JAMES DARYL WEST,
Appellant,

V.

SABRINA SCHULTZ,
Food Service Employee,
DIANN SPRATT,
Food Service Employee,
WEXFORD HEALTH SOURCES, INC.,
A Corporation,
Appellees.

On Appeal from the United States District Court of the Middle District Florida
Fort Myers Division

Case No.: 2:16-CV-694-SPC-NPM

## APPELLANT'S INITIAL BRIEF

James Daryl West #651314
Sago Palm Re-Entry Center
500 Bay Bottom Road
Pahokee, FL 33476

## CERTIFICATE OF INTERESTED PERSON AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and 11th Cir. R 26.1, Appellant hereby certifies that the following

is a list of all persons and entities that have an interest in the outcome of this case:

1.    James Daryl West, Appellant/Plaintiff;

2.    Wexford Health Sources, Inc., Appellee/Defendant (not publicly held);

3.    Diana Spratt, Appellee/Defendant;

4.    Sabrina Schultz, Appellee/Defendant;

5.    Florida Department of Corrections (state agency);

6.    Covery's Specialty Insurance Company, Appellee/Defendant's Liability Insurer;

7.    The Bontry Group, as the Parent Corporation of Wexford Health Sources, Inc. (not publicly held);

8.    Maria Rives, Asst. Attorney General, Appellee/Defendant's Counsel;

9.    Devang Desai, Esq., Gaebe, Mullen, Antonell & Di Matteo, Appellee/Defendant's Counsel;

10.   Alexander Dombrowsky, Esq. and Mary Katherine Hunter, Esq., Chimpoulis Hunter, P.A., Appellee/Defendant's Former Counsel;

11.   Emily C. Smith, Esq., Formerly with Gaebe, Mullen, Antonell & Di Matteo;

12.   Melissa Thibeault, Esq., and Stanley Plappert, Esq., the Florida Legal Advocacy Group, Appellant/Plaintiff's Former Counsel;

13.   Honorable Sheri Polster Chappell, United States District Judge, Middle District Ft. Myers Division

14.   Honorable Nicholas P. Mizell, United States Magistrate Judge, Middle District Ft. Myers Division

## B. CORPORATE DISCLOSURE STATEMENT

Appellant certifies that no public-traded stock, equity, or debt may be substantially

affected by the outcome of the proceedings.

James Daryl West, #651314

## STATEMENT REGARDING ORAL ARGUMENT

Appellant in his initial brief requests this Court to grant oral argument in conjunction with the district court's granting the Appellee's motion for summary judgment and dismissing Appellant's claims with prejudice despite the court's opinion dated January 28, 2022. The district court found that ordering Appellant to greatly exceed the lifting limitations prescribed by Dr. Berrios was so obviously wrong that any reasonable official would have known it violated the Constitution. The district court also found that Schultz and Spratt violated the Eighth Amendment by ordering him to carry 75 lb. bags of vegetables against doctor's orders.

Appellant's requests oral argument to address his *Monell* claim against Wexford Health Sources as having a long and well documented history of denying non-emergency care such as "elective" surgeries and specialist's consultations. Oral argument is necessary to resolve the issues in this case. Oral argument will aid the Court in deciding whether the district court's abused its discretion in granting summary judgment in Appellee's favor without holding an evidentiary hearing. Appellant is pro se and is in need of counsel to represent him in untangling the web that has been weaved by the Appellees who have clearly done everything in their power to have his case dismissed as frivolous.

**Table of Contents**                                    **Page**

Certificate of Interested Persons and Corporate Disclosure Statement ……............ C-1

Statement Regarding Oral Argument …………………………………..………... i

Table of Contents ………………………………………………..……………... ii

Table of Citations …………..…………………………………………………... iii, iv

Jurisdictional Statement ……………………………………………………………  1

Statement of the Issues ……………………………………………………………   1

Statement of the Case ……………………………………………………………  1

Summary of the Argument ……………………………………………………………  2

Argument ……………………………………………………………….............  3

ISSUE I

SPRATT WAS DELIBERATELY INDIFFERENT TO APPELLANT'S SERIOUS
MEDICAL CONDITIONS AND CONDITIONS OF CONFIMEMENT BY NOT
HONORING HIS VALID MEDICAL PASSES COMPELLING HIM TO EXCEED
DOCTOR BERRIO'S WRITTEN ORDERS ……………………………………… 6

ISSUE II

THE DISTRICT COURT ABUSED ITS DISCRETION DISMISSING SABRINA
SCHULT AS A DEFENDANT WHEN THE U.S. MARSHALLS FAILED
NUMEROUS TIMES TO EFFECTUATE SERVICE …………………………….. 13

ISSUE III

WEXFORD HEALTH SOURCES HAD A WELL DOCUMENTED POLICY OF
DENYING NON EMERGENCY CARE IN DELIBERATE INDIFFERENCE TO
APPELLANTS SERIOUS MEDICAL NEEDS ……………………………….…… 15

Conclusion ……………………………………………………………………..…  26

Certificate of Service …………………………………………………………..…… 27

## Table of Citations                                           Page

*Allen v. Bd of Pub. Ed.for Bibb County,* 495 F.3d 1306, 1315 (11ᵗʰ Cir. 2007) ................. 5

*Alexander v. Barefield,* 2007 U.S. Dist. LEXIS 103067 (N.D. Fla. June 7, 2007) ............... 8

*Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986) ......................................... 5

*Bingham v. Thomas,* 654 F.3d 1171, 1176 (11th Cir. 2011)......................................... 16

*Brennan v. Headley,* 807 F. Appx 927, 937 (11th Cir. 2020)................................ 5, 8, 15, 18

*Dean v. Wexford Health Sources Inc.,* 18 F. 4th 214, 222-223 (7th Cir. 2021).................... 24

*Estelle v. Gamble,* 104 S. Ct. 285 (1976) ................................................................ 8

*Farmer v. Brennan,* 114 S. Ct. 1970, 1978 (1994) ................................................ 5, 8, 18

*Gillis v. GA, Dept. of Corr.,* 400 F. 3d 883, 884 n.2 (2005) ....................................... 23

*Glisson v. Indiana Dept. of Corrections,* 849 F.3d 372 (7ᵗʰ Cir. 2017)............................. 24, 25

*Hall v. Funk,* (N.D. Ill. Mar. 18, 2019) ................................................................ 25

*Hartman v. Correctional Medical Services Inc.,* 960 F. Supp. 1577
(M.D. Fla. Dec 30, 1996) ................................................................................. 5

*Hinson v. Edmond,* 192 F. 3d 1342 (11th Cir. 1999)................................................... 23

*Hudson v. McMillian,* 503 U.S. 1, 8 (1992)........................................................... 8

*Farmer v. Brennan,* 511 U.S. 825, 834 (1994)................................................... 5, 8, 18

*Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003) ............................................ 16

*Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 594 (11th Cir. 1995) ............................. 5

*Lane v. Philbin,* 835 F.3d 1302, 1307 (11th Cir. 2016)] ............................................. 18

**Table of Citations**          <u>**Page**</u>

*Melton v. Abston,* 841 F. 3d 1207, 1222 (11th Cir. 2016) ………………………………….. 6, 17, 23

*Rance v. Rocksolid Grant USA, Inc.,* 583 F. 3d 1284, 1288 (11th Cir. 2009) …………………. 13

*Richardson v. Johnson,* 598 F. 3d 734, 739-40 (11th Cir. 2010) ……………………………. 13

*Rioux v. City of Atlanta, GA,* 520 F.3d 1269, 2174 (11th Cir. 2008) …………………….…. 4

*Roberts v. Horton,* 2013 U.S. Dist. LEXIS (N.D. Fla. Nov 4th 2013) ……………………….. 9, 22

*Salmon v. Aramark,* 2010 U.S. Dist. LEXIS 124949 …………………………..……………… 9

*Salmon v. Aramark,* 2010 U.S. Dist. LEXIS 91424 ……………………………….…………..… 9

*Shaw v. Allen,* 701 F. App'x 891, 93 (11th Cir. 2017) …………………………………..… 16, 18

*Swain v. Junior,* 961 F.3d 1276, 1285 (11th Cir. 2020) ……………………………………… 18

*Whiting v. Wexford Health Sources, Inc.,* 839 F.3d 658, 664 (7th Cir. 2016) …………………..… 24

*WSB-TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir. 1988) …………………………….…………..…... 5

*Statutes*

*Fed.R.Civ.P. 4(m)* … … … … … … … … … … … … … … … … … … … … … … … … … … … … … 13, 14

*U.S.C. §1915(d)* ………………………………………………………….……………… 13, 15

*U.S. Cont., Amend. VIII* ……………………………………………………………..…1, 4

*42 U.S.C. § 1983* ……………………………………………………………………………1

## JURISDICTIONAL STATEMENT

The Appellant Court has subject matter jurisdiction under 42 U.S.C. § 1331(a) because the complaint raises a question whether the Appellees violated the Appellant's rights under the United States Constitution. This Court has appellate jurisdiction under 28 U.S.C. §1291 because the grant of summary judgment to the Appellees is a final judgment. Judgment was entered February 23, 2022 and Appellant notice of appeal was filed on April 9, 2022.

## STATEMENT OF THE ISSUES

1.    Whether the district court in granting summary judgment improperly decided disputed factual issues.

2.    The district court abused its discretion by not drawing all inferences in favor of the Appellant that would have precluded summary judgment.

## STATEMENT OF THE CASE

This is a § 1983 filed by Appellant who is housed at Sago Palm Reentry Center seeking damages based on deliberate indifference to his serious medical conditions and his conditions of confinement claims. Appellees were granted summary judgment and the case dismissed in favor of Appellees.

1

## SUMMARY OF ARGUMENT

1.       Appellee Spratt was deliberately indifferent to Appellant's serious medical needs and conditions of confinement in violation of the Eight Amendment.

2.       Appellee Spratt was deliberately indifferent by not honoring Appellant's medical passes and forcing him to perform assignments beyond his physical capabilities while being cane dependent.

3.       Appellee Spratt forced the Appellant to sit on an upside down trashcan and chop zucchini all day despite his pleas of unbearable pain and numbness.

4.       Appellee Spratt threatened to have Appellant placed in confinement for refusing to work if he did not follow her orders.

5.       The district court abused its discretion by dismissing Sabrina Schultz as a defendant because the U.S. Marshalls could not effectuate service on her despite numerous attempts.

6.       Wexford had a policy in place denying elective surgeries such as orthoscopic knee surgery and outside specialist's consultations.

7.       Wexford's policy of providing conservative or ineffective care and treatments known to be ineffective.

8.       Wexford's chief health officer's actions were deliberately indifferent in annotating the Appellant's radiologist's reports as "abnormal" and placing them in the medical records without further evaluation.

9.       Wexford's policy of restricting non-emergency medical treatment tied the hands of Wexford's employees preventing Appellant from, at a minimum, a recommendation to see the appropriate specialist.

10.      Appellant placed sufficient evidence in the record that a reasonable jury could have

found, in fact, that there existed genuine issues of material fact denying that a reasonable jury would have precluded summary judgment in favor of Appellees.

11.    The district court erred in granting counsel's request to withdraw as Appellant's counsel after he wrote them a letter complaining about their representation and the handling of certain issues. This letter was only written as a cry for help. Never did the Appellant think that Magistrate Judge Mizel would allow Melissa Thibeault and Stanley Plappert of the Florida Legal Advocacy Group to withdraw as counsel without holding, at a minimum, a telephonic hearing to resolve the dispute.

## **ARGUMENT**

The district court abused its discretion by entering summary judgment in favor of the Appellees Diana Spratt, Sabrina Schultz, and Wexford Health Sources, Inc. by dismissing Appellants claim's with prejudice on February 23, 2022 Appellant filed a timely notice of appeal on April 9, 2022. On December 2, 2022 this Court issued its order finding that the appeal is not frivolous and GRANTS LTP. In the same order the Court issued a briefing schedule giving the Appellant until January 11, 2023 to file his initial brief. On January 3, 2023 the Appellant filed a motion for enlargement of time. On January 19, 2023 this court dismissed the appeal for want of prosecution. Appellant on February 20,2023 filed his motion to suspend Rule 42-2(e). Appellee Wexford filed their response in opposition to Appellant's motion to suspend Rule 42-2(e) and reinstate appeal. On April 20, 2023 Appellant filed his reply in opposition to Appellee Wexford's response to Appellant's motion to suspend Rule 42-2(e) and reinstate appeal. On April 18, 2023 this Court issued its second opinion granting the Appellant's motion to file his initial brief and reinstate his appeal. A new briefing schedule was given ordering the Appellant to file his initial brief on or by June 18, 2023.

In the Appellant's fourth amended complaint only three of Appellant's claims survived Appellee's challenges under F.R.C.P. 12(b)(6). The district court's opinion dated January 28, 2021 found Schultz and Spratt violated the Eight Amendment by ordering Appellant to carry 75 lbs. bags of zucchini against doctor's orders. The Court also found that ordering Appellant to greatly exceed the lifting limitations of 15 lbs. prescribed by Dr. Berrios was so obviously wrong that any reasonable official would have known it violated the Eight Amendment under the United States Constitution. At the summary judgment stage the Eleventh Circuit should be able to find several issues of material fact that should have precluded the district court from granting summary judgment in favor of the Appellees.

The district court was obligated to evaluate the summary judgment record in a light most favorable to the Appellant as the non-moving party. The Appellant demonstrated that there were numerous issues of material fact that exist as to Wexford's customs and policies. Wexford can only be liable if the alleged constitutional harm is the direct result of a custom or policy. "A policy is a decision that is officially adopted by the municipality or created by an official of such a rank that he or she could be said to be acting on behalf of the municipality and a custom is a practice that is so settled and permanent that it takes on the force of law." When a district court considers a motion for summary judgment it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008).

The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson.* "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts and if that inference

4

introduces a genuine issue of material fact, then the court should not grant summary judgment." _Allen v. Board of Pub. Educ. for Bibb County_, 495 F.3d 1306, 1315 (11th Cir. 2007). The Eight Amendment prohibits "cruel and unusual punishment and imposes a duty on prison officials to take reasonable efforts to ensure that inmates receive adequate medical care under the constitution." _Farmer v. Brennan_, 114 Ct. 1970 (1994). Summary judgment is improper if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts and if that inference introduces a genuine issue of material fact. The pleadings, answers, to interrogatories, affidavits, depositions, and admissions, on file show the Appellant is entitled to judgment as a matter of law. The district court erred in granting summary judgment in favor of the Appellees. The Appellant is requesting this Honorable Court to reverse the decision for summary judgment and remand this case for trial. _Jeffery v. Sarasota White Sox Inc_, 64 F.d 590, 594(11th Cir.1995). An issue of fact is "material" if it might affect the outcome of the case under governing law. _Anderson v. Libery Lobby Inc,_ 477 U.S. 242, 248 (1986).

It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the Appellant who is the non-moving party. As the opposing party the Appellant's inferences need not be more probable than those inferences in favor of the Defendants to create a factual dispute, so long as they can be reasonably drawn from the facts. When more than one inference reasonably can be drawn it is for the trier of facts to determine the proper one. _WSB-TV v. Lee, 842 F.2d 1266,1270 ( 11th Cir.1988)_ ("Thus if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts and if that evidence introduces a genuine issue of material fact than the reviewing court should not grant summary judgment"). Appellant cited _Hartman v . Correctional Medical Services Inc_., 960 F. Supp. 1577 (M.D. Fla, Dec 30, 1996) "the district court must cull the universe when drawing all possible inferences in favor of

the appellant." The Appellant placed in the record a chronological record of health care as evidence to support his opposition to the Appellee's motions for summary judgment.

The district court concluded in its February 23, 2022 opinion and order that no reasonable jury could find that the Appellees were deliberately indifferent to Appellant West's conditions of confinement or his serious medical needs. The district court then found it wildly implausible and unsupported by any evidence that five weeks in foodservice exacerbated West's conditions in any significant way. Although not a model of clarity Appellant through his motions, responses, interrogatories, affidavits, affirmative answers and exhibits clearly shows that there were several genuine issues of material facts that clearly existed precluding summary judgment.

The Court has previously found that Schultz and Spratt violated the Eight Amendment by ordering him to carry 75 lbs. bags of vegetables against doctor's orders. The Court finds West's allegations sufficient to state a claim against Wexford for deliberate indifference. The Appellant accused FDOC officials of violating his constitutional rights under the Eight Amendment by forcing him to perform duties that exacerbated his pain clearly violating his medical passes. *Melton v. Abston*, 811 F.2d 1207 (11th Cir. 2016).

**ISSUE I**

**SPRATT WAS DELIBERATELY INDIFFERENT TO APPELLANT'S SERIOUS MEDICAL CONDITIONS AND CONDITIONS OF CONFINEMENT BY NOT HONORING HIS VALID MEDICAL PASSES COMPELLING HIM TO EXCEED DOCTOR BERRIOS' WRITTEN ORDERS**

Appellant West filed a civil rights complaint against Appellees Spratt and Schultz who were his immediate supervisors when scheduled to work. Both were deliberately indifferent to his serious medical conditions and his conditions of confinement by forcing him to work in foodservice despite being a handicapped inmate who depended on a cane to support his ambulation. These medical passes proscribed the following: restricted activity; light duty; no

6

prolong standing over 10 minutes; no pushing, pulling or bending; no lifting over 15 lbs.; the use of a cane for one year; orthopedic shoes; insoles with arch supports; and a knee brace. These medical passes would have excused him from his foodservice assignment at any other institution in Florida's prison system which is in violation of the Eight Amendment. In Appellant's response to Spratt's motion for summary judgment he included as his own exhibit, which Spratt listed as her own exhibit, a FDOC internal history of Appellant's movements and work assignment history clearly showing that every time that he had been erroneously assigned to foodservice he had been told by staff or the foodservice director "you do not have report and you will be reassigned."

In Appellant's fourth amended complaint Appellant stated plausible claims against Spratt and Schultz for violating the clearly mandated policies and procedures of FDOC and Aramark. As stated by Appellee Spratt throughout her summary judgment motion and her pleadings, responses including her deposition, affidavit, and interrogatories, she is very clear that inmates, including the Appellant, who are cane dependent are not allowed in foodservice because in the prison setting a cane is a weapon yet despite this fact Appellant was constantly threatened on a daily basis he would be placed in confinement for refusing to work.

The Appellant would state that Spratt and Schultz were deliberately indifferent to his conditions of confinement by intentionally requiring him to perform duties that violated Doctor Berrios' written orders.

Both Spratt and Schultz forced the Appellant to sit on an upside down trashcan and chop zucchini and carrots all day in addition to lifting and carrying these bags of vegetables either from the vegetable cooler or from a stack. On June 27th, 2015, Schultz unlocked the cooler and ordered the Appellant to carry the bags of zucchini from the stack (bags weighing approximately

75 lbs.) while being cane dependent which caused him to lose his balance and the bag came crashing down on top of him. This caused serious injury of immediate pain and numbness throughout his entire body. As a direct result medical was called and the Appellant was taken to medical in a wheelchair.

Appellant must prove that Appellee Spratt violated his Eight Amendment by subjecting him to cruel and unusual punishment. Both the objective and the subjective requirements must be met in cases pertaining to prison conditions. First, the constitutional deprivation must have been objectively and sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong of an Eight Amendment claim is contextual and responsive to contemporary standards of decency. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) "Extreme deprivations are required to make out a conditions of confinement claim. It's only those deprivations denying the minimal civilized measures of life's necessities that are sufficiently grave to form the basis of a Eight Amendment violation......"). Appellant was handicapped with numerous medical passes good for one year and the fact Appellant was cane dependent and confirmed by Spratt throughout her pleadings substantiated he was subjected to a substantial risk of serious harm when she forced him to work daily in foodservice. She was aware that the Appellant faced such risks yet she disregarded those risks by failing to take all reasonable measures to abate said risk by causing him to be subjected daily to cruel and unusual punishment and the unnecessary infliction of pain and suffering.

*Alexander v. Barefield*, 2007 U.S. Dist. LEXIS 103067 (N.D. Fla. June 7, 2007 ) ("Denying summary judgment but noting that the parties have not cited and the undersigned has been unable to locate any published Eleventh Circuit cases applying the Eight Amendment deliberate indifference standards in the work place safety context").

The only published authority in the Eleventh Circuit that the Appellant could locate was *Roberts v. Horton*, 2013 U.S. Dist. LEXIS (N.D. Fla. Nov 4th 2013) ("The unopposed motion for summary judgment should be granted in part and denied in part. This is not a generic conditions of confinement case but a more specific case concerning a prison work assignment which is the subset of conditions of confinement case"). Appellant is requesting that the Court of Appeals allow his case to set the standard applying the Eight Amendment deliberate indifference in the prison work place safety standard. Unfortunately in *Horton or Alexander* these cases do not give the Court much guidance in showing what amounts to an extreme deprivation denying Appellant the minimal civilized measures of life's necessities that were sufficiently grave to form the basis of his Eight Amendment claim against Spratt.

Appellant has provided this Court with the following authority clearly showing the foodservice director at Charlotte Correctional, Robert Gilbreath, has had a history of abusing his authority by compelling his staff to force inmates to perform work duties beyond their physical limitations. *Salmon v. Aramark*, 2010 U.S. Dist. LEXIS 124949 and *Salmon v. Aramark*, 2010 U.S. Dist. LEXIS 91424, (" Robert Gilbreath and Tammy Williamson, required plaintiff to perform labor beyond his physical abilities and did so under the threat of punishment which included being placed in segregation with loss of all privileges").

As stated by Spratt throughout her pleadings she is firm in stating "in the prison setting a cane is considered a weapon" and if any inmate tried to enter foodservice and work, security would immediately ask the inmate to leave." In fact the total opposite occurred. Spratt compelled Appellant to work and he was never asked to leave which constituted cruel and unusual punishment. Appellant can show the required deliberate indifference during prison work assignments he was subjected to by showing that prison officials ignored a pervasive risk of

9

harm, although this risk ordinarily cannot be shown by a single incident. As stated by the district court in its opinion dated February 23, 2022 this went on for a period of five weeks clearly demonstrating this was not a single incident.

**Appellee Spratt's answers to Appellant's interrogatories dated August 17, 2021**

*Interrogatory No. 6* — Was it common practice at Charlotte Correctional while you were employed to have inmates that were cane dependent work in foodservice and how many cane dependent inmates worked in foodservice ?

*Answer No. 6* — It was not common practice to have inmates that were cane dependent work in foodservice because inmates with canes are not supposed to be in the kitchen.

*Interrogatory No. 14* — Please explain why you ordered the Plaintiff to lift and carry the 75lb. bags knowing he was cane dependent and making it impossible for him to perform? Please explain.

*Answer No.14* — See answer No.6.

*Interrogatory No 19* — As stated in answer 6, the Plaintiff would not have been able to come into the kitchen with a cane, which is considered to be a weapon in the prison setting. If any inmate tried to do so security would have asked that inmate to leave the kitchen. I do not recall the events from six years ago. I do recall that inmate West was only issued a cane pass for only a few days. My usual practice was to honor all medical passes. Was there a custom or policy in place while you were working in foodservice that allowed you to work inmates, such as the Plaintiff, that were cane dependent and [in possession of] numerous medical passes with extreme limitations? Please explain.

*Answer No. 19* — As to "cane dependent" and "extreme limitations." Without waiving the objections there was no custom or policy in place while I worked in foodservice that allowed you

to work inmates in violation of medical passes, but I do not believe or admit that inmate West was ever in that situation.

Appellant would include Spratt's deposition October 3, 2019, on page 6, lines 20-25 through page 7, lines 1-12 where Appellant's former counsel Melissa Thibeault of the Florida Legal Advocacy Group questioned Spratt and by her own admissions to the questions, she repeatedly answers she personally honored all the medical passes.

_Formor Counsel Melissa Thibeault_    — asked the questions:

Q.    As part of your training, did anyone go over inmate work passes with you?

A.    Yes.

Q.    And what were you told about that?

A.    You have to honor the pass. You have to make sure that they have the correct pass. If the pass they give you, you have to honor every bit of it. You can't deny anything.

Q.    And did anybody you worked with ever not honor an inmate pass?

A.    I can't answer that either.

Q.    Did you ever see that happening?

A.    I can't answer that either. I wasn't around if anybody gave anybody else a pass. I can't --- you mean myself?

Q.    Right. So you personally always honored passes; correct?

A.    Yes ma'am.

By Spratt's own admissions she is clear on always honoring the Appellant's medical passes. So the issue of material fact should be clear, based on the records, that Spratt did in fact compel the Appellant to work despite being cane dependent.

Spratt never honored these medical passes and required Appellant to have a "bed rest" or "lay-in" in order to be excused from his job assignment in foodservice. These passes were only valid for three days at a time.

The Appellant did not have a bed rest lay-in pass because the current one expired after 3 days. In order to receive a new medical pass for a bed rest lay-in the Appellant would have to self-initiate a medical emergency at foodservice in order to receive a new pass.

This unwritten policy was used by Spratt to compel the Appellant to pick and choose to either work or go to confinement. Spratt had the authority to excuse Appellant from his assignment. She knowingly decided to place him at a substantial risk of being injured despite Appellant having all the above-cited medical passes including the cane pass. Spratt also had a policy of compelling Appellant to work in foodservice while being cane dependent contradicting the policies of the FDOC and her employer Aramark who, according to Spratt, would prohibit Appellant from working in foodservice while being cane dependent. This clearly violated the evolving standards of decency that mark the progress of a maturing society.

Appellant would affirmatively state that Spratt was deliberately indifferent to his serious medical conditions because she knew there existed an excessive risk of serious harm by compelling him to work. The district court stated "Spratt consistently states that she always honored medical passes." If that's the case why did Spratt decided to compel Appellant to exceed his passes restrictions and limitations?

12

## ISSUE II

**THE DISTRICT COURT ABUSED ITS DISCRETION DISMISSING SABRINA SCHULTZ AS A DEFENDANT WHEN THE UNITED STATES MARSHALL FAILED NUMEROUS TIMES TO EFFECTUATE SERVICE**

The district court abused its discretion by later dismissing the claim against Schultz under Rule 4(m) for lack of service of process. For prisoners proceeding in forma pauperis, "[t]he officers of the court shall issue and serve all process." *28 U.S.C. § 1915(d)*.

The Eleventh Circuit has held that the failure of the U.S. Marshals Service's to serve a defendant on behalf of an in forma pauperis plaintiff, through no fault of that plaintiff, constitutes "good cause" under Rule 4(m*). Rance v. Rocksolid Granit USA, Inc*., 583 F.3d 1284, 1288 (11th Cir. 2009). The Eleventh Circuit has further held: It is unreasonable to expect incarcerated and unrepresented prisoner-litigants to provide the current addresses of prison-guard defendants who no longer work at the prison. Thus, ... as long as the court-appointed agent can locate the [unserved] defendant with reasonable effort, prisoner-litigants who provide enough information to identify the prison-guard defendant have established good cause for Rule 4(m) purposes. *Richardson v. Johnson*, 598 F.3d 734, 739-40 (11th Cir. 2010).

Back on May 16, 2008 Magistrate Judge Mirando appointed a special appointee to serve the Defendants. The special appointee returned the summons issued to Schultz unexecuted because she no longer worked at Charlotte Correctional. (Doc. 54). It was not until November 20, 2018 that the magistrate judge ordered the U.S. Marshals to serve Schultz. The Court became aware of service not being effectuated on Schultz through the process of a waiver-of-service packet by mail but Schultz did not waive service. (Doc. 139). Immediate action should have taken place to secure her presence yet months turned into years without service ever taking place.

Because of this Appellant has been severely prejudiced because Schultz has been erroneously dismissed despite her being found deliberately indifferent to his conditions of confinement.

On October 18, 2019 Appellant, through counsel, requested that the U.S. Marshals personally serve Schultz. (Doc. 188). The Court then denied the service motion without prejudice and ordered Appellant, again through counsel, to seek defense counsel's agreement to accept service before moving the U.S. Marshals to serve them. (Doc. 194). The district court abused its discretion by dismissing Sabrina Shultz under Rule 4(m) for lack of service of process. The U.S. Marshall sent Schultz a waiver of service packet by mail but Schultz did not waive service. (Doc. 115). On January 6, 2021 Appellant moved the U.S. Marshalls to personally serve Schultz. (Doc. 228). Magistrate Judge Mizell granted motion and ordered the U.S. Marshalls to personally serve Schultz at the address on file. (Doc. 244). Again the U.S. Marshalls returned the summons unexecuted because the address was vacant and the neighbors were unable to provide a new address for Schultz. The magistrate judge then ordered the Appellant to provide a new address for Schultz. (Doc. 248) and (Doc. 249).

Appellant filed a motion for a revised order to effectuate service on the defendant Schultz stating he was unable to provide a current address. Counsel also stated that Schultz no longer worked for FDOC and did not know Schultz's address. That was the end of the inquiry until the district court issued another opinion and order on May 10, 2021 giving a chronological order of trying to effectuate service on Schultz. (Doc. 264). Appellant filed an emergency motion to reconsider this Court's opinion and order dated May 10, 2021 (Doc. 271). In the court's opinion and order (Doc. 278) the claim against Schultz is dismissed without prejudice under F.R.C.P. 4(m) because she has remained unserved for nearly 5 years. Appellant argued that dismissing Schultz would be "unfair punishment." The district court and the United States Marshals have

14

failed to effectuate service on Schultz. On two separate occasions packets were sent by mail, both going unserved. Likewise an attempt was made to personally serve her.

Appellant's counsel never requested defense counsel to accept service on behalf of Schultz. (Doc. 258). The main problem with inmate's proceeding in forma pauperis pursuant to 28 U.S.C. 1915(d), is that they must depend on the U.S. Marshall's Office to effectuate service. It's the district court and U.S. Marshal's office who ultimately failed him. From the very beginning through no fault of Appellant the court was aware of the difficulties in effectuating service on Sabrina Schultz. The district court has unlimited resources and could have had a private service processer effectuate service on Schultz to secure her presence.

Appellant is requesting that this court reverse the district court's order, reinstate Schultz as a Defendant in this case and also remand back to the district court to issue a revised order compelling the U.S. Marshals to effectuate service on Sabrina Schultz requiring her response to the Appellant's fourth amended complaint.

**ISSUE III**

**WEXFORD HEALTH SOURCES HAD A WELL DOCUMENTED CUSTOM POLICY OF DENYING NON EMERGENCY CARE IN DELIBERATE INDIFFERENCE TO APPELLANTS SERIOUS MEDICAL NEEDS**

The district court erred by granting summary judgment in favor of Wexford because the Appellant had established a genuine issue of material fact in his claim against Wexford. Appellant did provide evidence of a custom policy. Wexford Health Sources Inc. was the private company under contact with FDOC and provided healthcare to all inmates in region 4, specifically Charlotte Correctional, from October 2014 until September 11, 2015 where the Appellant was housed at the time. Wexford is treated as a municipality for purposes of 1983 claims. *Brennan v. Headley*, 907 F. App'x 927, 937 (11th Cir. 2020).

15

In the Eleventh Circuit a serious medical need is one that has been diagnosed by a physician mandating treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention. *Shaw v. Allen*, 701 F. App'x 891, 93 (11th Cir. 2017) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Therefore West plausibly alleges that each Defendant was deliberately indifferent to his serious medical need. Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence. " *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).

Several of Wexford's medical personnel diagnosed the Appellant with chronic degenerative disk and joint disease in his lower lumbar spine, right knee and both feet and as a direct result of these extremely painful conditions numerous medical passes were written to excuse him from being subjected to the daily conditions of prison life. These medical passes were for restricted activity; light duty; no prolong standing over 10 minutes; no pushing, pulling or bending; no lifting over 15 lbs.; the use of a cane for one year; orthopedic shoes, insoles with arch supports and a knee brace. In the district court's opinion and order dated February 23, 2022 the Court erroneously states "The medical staff also periodically issued West medical passes limiting his activity." This statement is not true; all of Appellant's medical passes were written and valid for 1 year. These passes have been written since the Appellant's inception into the prison system.

Wexford Health Sources is a private company that provided healthcare to inmates at Charlotte Correctional and was under contract with the FDOC. Appellant clearly alleged plausible claims to state a cause for action for deliberate indifference. In count 3 of his complaint Appellant stated a plausible claim that Wexford had a policy of restricting non-emergency care

16

and elective surgeries. This policy of restricting non-emergency medical treatment tied the hands of Wexford's employees preventing Appellant from receiving more intense treatments and left him in severe pain.

Dr. Joseph Rashkin evaluated West on August 29, 2019 and opined, "the lack and delay of medically necessary and indicated medical care in the form of diagnostic studies, appropriate medical consultation and care has significantly prolonged, worsened, and been detrimental to [West]'s state of ill being from the injury/accident. Rashkin recommended an MRI, though he applied somewhat circular logic to justify it: "My opinion that this is a permanent injury is based on the prolonged clinical complaints, positive physical findings of muscle spasm and pain, and abnormal MRI scan that needs to be obtained to be able to render an opinion of permanency because of the injuries described above from the accident of 06/27/2015 and also to be able to render reasonable and medically necessary treatment for the above described state of ill being."

District Judge Sherri Polster Chappel in her opinion and order dated January 28, 2021states: "West suffered from the following conditions; chronic strained lumbosacral ligament, lower back pain, chronic and intervertebral disc disorder, thoracolumbar, and lumbosacral lumbar disc disorder/hernia, lumbar spondylitis, right-sided sciatica and left sided muscle spasms, injury to the muscle, fascia, and tendon of his lower back, premature degenerative osteoarthritis, and localized secondary osteoarthritis of the right knee."

Severe pain that is not promptly or adequately treated can constitute a serious medical need depending on the circumstances. *Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016). Interpreting West's allegations in a light most favorable to him the Court found he plausibly alleged a serious medical need. The district judge erred in dismissing the Wexford Defendants Dr. Carmello Berrios, (count 4) and Karen Blankenship, ARNP, (count 5) that shows a

17

difference in medical opinion, not deliberate indifference. The district court erroneously stated Blankenship did not have subjective knowledge of a serious medical need on the 29th of June. Appellant would point out that on June 29th he was seen by Blankenship at which time she was fully aware of his serious medical needs. She refused to examine the right knee physically and stated she did not have time to go through numerous medical records to see if Appellant was lying. The district court erred in dismissing Bonnie LaRosa (count 7). Each time LaRosa saw Appellant she confirmed the right knee condition was caused by his ace bandage being too tight.

The requirements of an Eight Amendment claim based on deliberate indifference to conditions of confinement are similar to those medical deliberate indifference claims. A plaintiff must satisfy objective and subjective criteria. Under the objective component the plaintiff must demonstrate "a substantial risk of serious harm." [*Farmer v. Brennan*, 114 S. Ct. 1970, 128 Ed. 2d 811 (1994)] ... Under the subjective component the plaintiff must prove "the defendants' deliberate indifference" to that risk of harm by making three sub-showings: (1) subjective knowledge of a risk of serious harm, (2) disregard of that risk and (3) conduct that is more than mere negligence." [*Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)]; *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020).

West's conditions of confinement claims are based on allegations that prison officials ignored his medical passes. Berrios diagnosed West with osteoarthritis, degenerative joint disease, and chronic knee pain and implemented a treatment plan that included limitations of certain physical activities. The Court finds it plausible that an official's disregard of West's prescribed limitations could create a substantial risk of serious harm. See *Shaw*, supra ("A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or

18

one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'").

Appellant alleged that FDOC had a policy or custom of deliberate indifference that caused Appellant injuries. As early as 2004 the Secretary of the FDOC was aware that Wexford's primary way to contain its costs was through tight utilization management which has been the only deciding factor in denying effective pain medication and the additional diagnostic testing that was known to be needed. These policies are included in numerous progress reports by the Florida Legislature's Office of Program Policy Analysis and Government Accountability (OPPAGA) which describe the privatization of health services as one of the FDOC's cost containment measures. According to Plaintiff these cost saving customs and policies were the driving force behind Plaintiff's daily suffering on a regular basis so Wexford could maximize their profits. This has caused physical damage and deformity that is permanent and irreparable to all Appellant's weight bearing joints.

Conn as CEO was directly responsible for the operations and medical management services provided at Charlotte Correctional. He implemented and or enforced Wexford's cost-savings policy or custom, which caused Appellant to needlessly suffer. In the Appellant's complaint he raised issues regarding Wexford's custom and policies of denying Appellant the additional diagnostic tests such as M.R.I.s, specialist consultations and surgery on the right knee. Wexford considered these types of surgeries as "elective." Appellant was prescribed ibuprofen 600mg which was ineffective in relieving the chronic pain he suffered on a daily basis.

All of Wexford's doctors and nurses refused to address the issue regarding surgery of the Appellant's right knee because it was considered "elective" due to it not being life threatening. FDOC and Wexford are responsible for institutional liability pursuant to their set institutional

policies that clearly created an environment of deliberate indifference. Wexford's policy of denying "elective" surgeries qualified as a policy that was clearly and deliberately indifferent to Appellant West's serious medical needs. The radiologist reports clearly showed at the minimum a specialist consultation should have been recommended so the correct diagnosis and treatment could be given.

This is not a case where there was a disagreement as to the type of care the Appellant was receiving. The Appellant has stated all along that because of these policies he could not receive the additional treatment and care needed to relieve the chronic pain and numbness that he experienced then and still exists on a daily basis. Wexford's policies were the driving force behind the constitutional violations. Wexford has a long and well documented history of denying non-emergency care, such as elective surgeries, and special's consultations that actually were qualified according to their own policy. This was deliberately indifferent to the Appellant's serious medical needs. Wexford's doctors and nurses assigned to Charlotte Correctional examined Appellant yet simply refused to, at the minimum, make the recommendations to Wexford's "Collegial Review." Dr. Hemphill, Dr. Berrios, Dr. Wetterer and ARNP, Karen Blankenship, became deliberately indifferent to Appellant's needs by marking all the radiologists reports as "abnormal" and just filing them without any follow up care that was recommended by the outside doctor who confirmed the additional diagnostic testing such as MRIs, this policy was designed to control cost.

Conn as CEO was directly responsible for the operations and medical management services provided and responsible for the manner in which Defendants operated at Charlotte Correctional. Plaintiff appears to allege that CEO Conn implemented and or enforced Wexford's cost savings policy or custom of inadequate care and treatment that was needed in order to

20

relieve him of the chronic pain and suffering on a daily basis. It's was these very policies that tied the hands of Wexford's employees to, at a minimum, make the necessary recommendations to the appropriate specialists.

The district court should have considered all the evidence Appellant placed in the record by drawing all reasonable inferences in light most favorable to him as the non-moving party. The Appellant included exhibits that clearly supported the elements of his case and disputed the Appellees arguments. The district court abused their discretion by entering summary judgment because they concluded that no reasonable jury could find that Defendants were deliberately indifferent to the Appellant's serious medical needs and conditions of confinement in violation of the Eight Amendment.

Appellant has stated all along that it was the ineffective care and treatment of Wexford's personnel that caused and aggravated his pain and suffering. Wexford has a long and well-documented history of denying non-emergency care, such as elective surgeries which qualify, as a policy that was clearly and deliberately indifferent to the Appellant's serious medical needs. Wexford's doctors and nurses at Charlotte Correctional that examined Appellant simply refused to, at a minimum, make the recommendations to Wexford's "Collegial Review." This policy was designed to control cost.

Appellant in response to Wexford's motion for summary judgment attached numerous exhibits to support his claims against Wexford showing that they have a long history of these widespread practices including the inadequate care and treatment that was needed in order to relieve him of the chronic pain he suffered on a daily basis. It was these very policies that tied the hands of Wexford's employees to, at a minimum, make the necessary recommendations to

21

the appropriate specialists. Their actions constituted deliberate indifference towards Appellant's serious medical needs.

The only published authority in the Eleventh Circuit that the Appellant could locate was _Roberts v. Horton_, 2013 U.S. Dist. Lexis 173025 (N.D. Fla. Nov. 4, 2013) "the unopposed motion for summary judgment should be granted in part and denied in part").

Appellant created genuine issues of material fact by submitting documents of Wexford's own policies and utilization management guidelines in addition to their contract with FDOC, which clearly showed that cost saving measures were in effect. Genuine issues of material fact supports Spratt's deliberately indifferent to the Appellant's knee and back injuries. Wexford employees were only providing conservative treatments they knew were ineffective. It was these very employees who refused to, at a minimum, make the necessary referrals for additional diagnostic testing or consultations of specialists.

These documents were also cited in _Horn v. Jones_, 2015 U.S. Dist. LEXIS 73964 (" the report found that a primary way Wexford contains its costs is through tight utilization management and found that the quality of Wexford's health care has been problematic. The report identified postponement of specialty clinical visits as an issue of concern"). The district court erred in denying Appellant's attached exhibits (the following) which clearly show: 1) Wexford's history of widespread practices with verifying medical records, affidavits, medical passes, 2) FDOC Health Service Bulletins, 3) FDOC's contract with Wexford, 4) Wexford's Utilization Management Guidelines and also their Procedure and Policy Manual, 5) several reports from the Correctional Medical Authority (CMA), 6) Office of Program Policy Analysis and Government Accountability, an office of the Florida Legislature (OPPAGA), 7) and numerous court decisions where Wexford has been found deliberately indifferent pursuant to

22

their unconstitutional policies of denying "elective" surgeries such as orthoscopic knee procedures, and outside specialist consultations. Additionally numerous newspaper articles from the Miami Herald and BrowardBulldog.org, all have warned throughout the years that Florida's government has allowed Wexford to cut costs on the care and treatment being provided to the inmates including, the Appellant, in order to maximize its profits. The district court stated West cannot withstand summary judgment based on allegations alone. Appellant provided more than enough evidence to preclude summary judgment. The depositions that were attached as exhibits clearly show Wexford would not authorize certain treatments such as MRI's because they had to pay the $275.00 fee. Wexford chief health officers (Hemphill, Berrios, Wetterer, Blankenship (ARNP), and LaRosa (RN)), all knew of the chronic conditions but refused to provide the care and treatments that were needed to relieve the pain and numbness.

Appellant could not receive the additional care and treatment needed to relieve his pain and he was refused specialist consultations and MRI's. Its these customs and policies that have violated the Appellant's constitutional rights causing him to suffer from pain then and now. *Gillis v. Ga, Dept of Corr*, 400 F.3d 883, 884 , n. 2 (2005) ("When reviewing a grant of summary judgment we must review the facts in light most favorable to the non-moving party").

*Hinson v. Edmond*, 192 F.3d 1342, 1348 (11th Cir.1999) ("holding a prisoner survived summary judgment by creating a genuine issue of material fact about whether a doctor knew of his serious medical condition and intentionally or with reckless disregard delayed treatment"). All of Wexford's medical personnel clearly knew about the Appellant's serious chronic degenerative disc and joint disease. This Court has already stated this clearly qualifies as a serious medical condition and violates the 8th Amendment if not treated accordingly. *Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016).

Wexford's Chief Health Officers at Charlotte Correctional allowed these cost saving policies to severely restrict and deny all "elective surgeries," and outside specialist consultations, and the additional diagnostic testing known to be needed such as MRI's. Appellant included these jury verdicts in matters involving Wexford in other jurisdictions as undisputed evidence of their history of "widespread and persistent practice" of denying inmates such, as the Appellant, adequate medical treatment. Appellant would also point out that Wexford's website uses the word "touting" to describe its cost cutting policies regarding offsite specialty referrals. As a pro se inmate it is extremely difficult to uncover evidence to support his valid claims against Wexford having customs and policies of denying care that is not life threatening.

Wexford has a history of requiring its medical personal at the institutional level to submit all requests to its "Collegial Review Board." *Dean v. Wexford Health Sources Inc*, 18 F.4th 214, 222-223 (7th Cir.2021) noting that Wexford's collegial review policy "requires Wexford's corporate office to preapprove offsite care"). Appellant cites Seventh Circuit case law stating that *Monell* liability does not always require a finding of individual liability. *Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 664 (7th Cir. 2016). Plaintiff points to two specific cases to support his position: *Hall v. Funk* (N.D. Ill. Mar. 18, 2019) and *Glisson v. Indiana Dept. of Corrections*, 849 F.3d 372 (7th Cir. 2017).

In *Hall v. Funk*, a jury had found in favor of the defendant but found Wexford liable on the *Monell* claim. Wexford subsequently moved for judgment as a matter of law or alternatively for a new trial, arguing that the jury verdict was inconsistent. The Court concluded that the two verdicts were not inconsistent because the jury may have concluded that the individual defendant "lacked the requisite mental state for liability but that Wexford's policies were nonetheless responsible for a violation of the Plaintiff's constitutional rights." In *Hall* the court explained that

24

the subjective element in the deliberate indifference claim constituted the basis on which the jury reached divergent findings on the liability of Wexford and the individual doctor. *Glisson v. Indiana Dept. of Corrections* involved a section 1983 suit alleging that the medical staff and the company providing health services in an Indiana prison were deliberately indifferent to the prisoner's serious medical needs. *Glisson.*

The district court dismissed the *Monell* claims after granting summary judgment in favor of the individual defendant doctors and nurses. The Seventh Circuit reversed that decision explaining that the "case well illustrates why an organization might be liable even if its individual agents are not." The Court finds *Glisson* and *Hall* to be persuasive and on point. In both cases the respective Courts held that it was possible for an organization or corporate entity to be held liable for a *Monell* claim of deliberate indifference even if the individual defendants are not. Similarly, in this case, it is possible that a jury could find that the individual Defendants were not deliberately indifferent to Plaintiff's medical needs, but rather that they could not respond adequately because of Wexford's unconstitutional policies. As such, individual liability is not a prerequisite to corporate liability in this case.

*White v. Woods,* 48 F.4th 853 (7th Cir.2022) ("White's left knee has been irreversibly and permanently damaged as a result of not having his left knee injuries surgically addressed for two years and nine months"). Appellant would state that White's mirrors the Appellant's with the exception of its appellant's right knee. Since 2014 he has been refused adequate care and treatment. The Court of Appeals should reverse summary judgment and move this case towards trial and appoint counsel.

## CONCLUSION

Appellant is requesting that this Court of Appeals reverse the district court's granting of summary judgment in favor of Appellees Spratt, Schultz and Wexford Health Sources Inc., and remand back to the district court to conduct a jury trial, appoint counsel for the Appellant and any other relief this Court deems necessary.

## DECLARATION OF INMATE FILING

I am James Daryl West, an inmate confined at Sago Palm Re-Entry Center. Today is Monday June 19th, 2023. I am depositing the following motion: *Initial Brief.* For this case in the institutions legal mail system with first class postage being prepaid by the institution on my behalf.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT (28 U.S.C. 1746; 18 U.S.C. 1621).

X _____

Signed on Monday, June 19, 2023

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, James Daryl West, that I have placed a copy of the foregoing motions in the hands of institutional officials here at Sago Palm Re-Entry Center entrusting the further delivery by mailing via U.S. Postal Service to: Clerk of Court for the Court of Appeals for the Eleventh Circuit at 56 Forsyth Street, N.W., Atlanta, GA 30303; Marie Rivas, Esq. of the Office of the Attorney General at 3507 E. Frontage Rd., Suite 200, Tampa, FL 33607; and Devang Desai, Esq. of Gaebe, Muellen, Antonelli and DiMatteo at 420 South Dixie Highway, Floor 3, Miami, FL 33146 on this Monday, June 19, 2023.

Respectfully submitted,

James Daryl West, #651314
Sago Palm Re-Entry Center
500 Bay Bottom Road
Pahokee, FL 33476

James Daryll West 651314
Sago Palm Reentry Center
500 Bay Bottom Road
Pahokee, FL 33476



US POSTAGE PITNEY BOWES

FIRST-CLASS

ZIP 33476
02 7H
0001325916

$ 003.90⁰

JUN 21 2023

Clerk of Court
Eleventh Circuit Court of Appeals
56 Forsyth Street N.W
Atlanta, GA 30303

CLEARED SECURITY

JUN 2 6 2023

U.S. MARSHALS SERVICE
Atlanta, GA

**LEGAL MAIL**